# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

**BERNELL JACKSON QUILLENS** §
§
**V.** § **A-17-CA-866-RP**
§
**GARY CUTLER,** §
**BUDDY MILLS, and** §
**JENNIFER FREYTAG**[1] §

## ORDER

Before the Court are Plaintiff Bernell Jackson Quillens's complaint [#1], Defendants' Motion for Summary Judgment [#32], brief in support [#33] and appendix [#34], Plaintiff's response [#36], and Defendants' reply [#38]. Plaintiff filed his complaint pro se and paid the full filing fee for this case. The Court subsequently appointed counsel to represent Plaintiff.

## STATEMENT OF THE CASE

At the time he filed his complaint pursuant to 42 U.S.C. § 1983, Plaintiff was confined in the Hays County Law Enforcement Center. Plaintiff alleges in July 2016, while in the Hays County Jail, he notified jail personnel he had a cyst on his foot. Plaintiff was subsequently transferred to the Gillespie County Jail for housing and then returned to the Hays County Jail. After filing a grievance regarding the lack of medical treatment for his cyst, Plaintiff was allegedly told there was nothing that could be done and he would have to wait until he was released from jail. Plaintiff alleges surgery for his cyst, that later turned out to be cancer, was delayed until May 2017. Plaintiff sues

---

[1] The Court substitutes Freytag, the proper spelling of the defendant's name previously identified as Fraytag.

1

Hays County Sheriff Gary Cutler, Gillespie County Sheriff Buddy Mills, and Nurse Practitioner Jennifer Freytag. He seeks damages in the amount of $1.6 million.

Defendants move for summary judgment. Initially, they argue Plaintiff's claims brought against them in their official capacities are barred by Eleventh Amendment immunity. Alternatively, they argue Hays County and Gillespie County are entitled to summary judgment because Plaintiff cannot establish either county had an official policy, custom, or practice that caused the alleged constitutional violation. Defendants also assert their entitlement to qualified immunity. They argue Defendants did not fail to treat Plaintiff, Plaintiff's medical treatment was objectively reasonable, and they were not deliberately indifferent to Plaintiff's serious medical needs.

Plaintiff responds genuine issues of material fact exist precluding summary judgment. Specifically, Plaintiff contends the declaration that "There is nothing more we can do" reflects a policy, custom or widespread practice at Hays County. Plaintiff counters there were many reasonable options for Hays County, including getting him to a physician or hospital without undue delay. Plaintiff argues Hays County's deliberate indifference to Plaintiff's serious medical needs resulted in a significant delay in treatment, unnecessary pain and suffering, serious bodily harm, physical impairment, and disfigurement. With respect to Gillespie County, Plaintiff responds Gillespie County has a practice of transferring a prisoner known to be in need of surgery to another jail irrespective of the seriousness of the medical condition. Plaintiff contends his transfer to Hays County delayed a necessary surgery resulting in substantial harm. Plaintiff asserts Sheriffs Cutler and Mills can be held individually liable for implementing the policies and practices. Plaintiff denies the defendants are entitled to qualified immunity.

<u>DISCUSSION AND ANALYSIS</u>

A. <u>Summary Judgment Standard</u>

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995); FED. R. CIV. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id.* at 323-24. At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial." *Id.* at 324. The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations. *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational

trier of fact could find for the non-moving party based upon the evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita*, 475 U.S. at 586)).  To the extent facts are undisputed, a court may resolve the case as a matter of law.  *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994).

B.     Eleventh Amendment Immunity

Defendants contend the claims brought against them in their official capacities are barred by the Eleventh Amendment.  The Eleventh Amendment generally divests federal courts of jurisdiction to entertain suits directed against states.  *Port Auth. Trans-Hudson v. Feeney*, 495 U.S. 299, 304 (1990).  The Eleventh Amendment may not be evaded by suing state agencies or state employees in their official capacity because such an indirect pleading remains in essence a claim upon the state treasury.  *Green v. State Bar of Texas*, 27 F.3d 1083,1087 (5th Cir. 1994).

The claims brought against the defendants in their official capacities are directed at Hays County and Gillespie County, not the State of Texas.  As such, Eleventh Amendment immunity is not applicable in this case.

C.     Medical Care

"The constitutional rights of a pretrial detainee ... flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment."  *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).  These rights include the right to medical care.  *Sanchez v. Young County, Tex.*, 866 F.3d 274, 279 (5th Cir. 2017).  Having said this, because the standard is essentially the same for both pretrial detainees and post-conviction prisoners, cases applying the Eighth Amendment are still relevant to the Court's analysis.

4

To establish deliberate indifference, Plaintiff must show "that a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) ). Delay in medical care, however, "can only constitute an Eighth Amendment violation if there has been deliberate indifference [that] results in substantial harm." *Id.* (alteration in original) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)). An allegation of "[u]nsucessful medical treatment does not give rise to a § 1983 cause of action. Nor does mere negligence, neglect or medical malpractice." *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (citations and internal quotation marks omitted).

A municipality may be liable under 42 U.S.C. § 1983 for the violation of these rights. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). When attributing violations of pretrial detainees' rights to municipalities, the cause of those violations is characterized either as a condition of confinement or as an episodic act or omission. *Hare*, 74 F.3d at 644. Cases of the former are attacks on "general conditions, practices, rules, or restrictions of pretrial confinement." *Id.* In cases of the latter, "the complained-of harm is a particular act or omission of one or more officials," and "an actor usually is interposed between the detainee and the municipality." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (*en banc*).

Plaintiff presents an episodic-act theory against both Hays County and Gillespie County. To establish municipal liability in an episodic-act case, a plaintiff must show "(1) that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted

and maintained with objective deliberate indifference." *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008) (quoting *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528–29 (5th Cir. 1999)).

An official cannot be found liable "unless the official knows of and disregards an excessive risk to inmate safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk. *Id.* at 836.

Policy can take the "form of written policy statements, ordinances, or regulations." *Id.* It can be "a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)). It can take the form of a failure to train, provided that the failure is "closely related to the ultimate injury" and not just attributable to a particular officer's shortcomings. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–91 (1989). It can also be a decision to adopt a course of action to handle a particular situation, if made by an authorized decisionmaker. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986).

1.    <u>Gillespie County - Official Capacity Claims Against Sheriff Buddy Mills</u>

Plaintiff has not shown any Gillespie County employee violated Plaintiff's clearly established constitutional rights with subjective deliberate indifference. The summary judgment evidence shows Plaintiff was incarcerated at the Hays County Jail on July 14, 2016, and was transferred to Gillespie County on July 26, 2016, pursuant to an agreement between Hays County and Gillespie County. Shortly after arriving at the Gillespie County Jail, the medical staff at the Gillespie County Jail

performed Plaintiff's admission physical. Def.'s Appx. Supp. Summ. J. [#34-1] at 15-16. The cyst on Plaintiff's left foot was noted. *Id.* On August 5, 2016, Nurse Practitioner L. Srubar ordered that an appointment with a podiatrist be scheduled. *Id.* at 19. On August 9, 2016, medical staff attempted to schedule an appointment with Hill County Advanced Foot & Ankle. *Id.* The following day Plaintiff was transported to the emergency room at Hill Country Memorial. *Id.* at 23-30. Plaintiff was diagnosed with a ganglion cyst and ordered to follow up with Susie Sant'Anna, DPM. *Id.* at 27-28. Various medications were prescribed to treat Plaintiff's pain. *Id.* at 19. Dr. Sant'Anna examined Plaintiff on August 23, 2016, and determined the cyst would need to be surgically removed. *Id.* at 39-40. Inexplicably, Plaintiff informed the doctor he would be released from jail in approximately 30 days. *Id.* at 40. The doctor noted the surgery could be done once Plaintiff gets a job. *Id.* Sometime in September 2016, Gillespie County Sheriff Mills was advised Plaintiff may need surgery. *Id.* [#34-2] at 236. On September 29, 2016, Plaintiff was returned to Hays County with orders for two prescriptions and a podiatry consult for surgery on the ganglion cyst. *Id.* [#34-1] at 49. Mills explained Plaintiff was returned to Hays County because Gillespie County did not have sufficient staff to guard Plaintiff at any hospital. *Id.* [#34-2] at 236.

Plaintiff's claim against Sheriff Mills centers on his statement that Plaintiff was returned to Hays County after medical staff was advised Plaintiff may need surgery. However, Plaintiff's return to Hays County is not conduct that would clearly evince a wanton disregard for any serious medical need. It shows just the opposite. Plaintiff, a pretrial detainee of Hays County, was returned to Hays County in order for him to have surgery. Dr. Sant'Anna's recommendation regarding surgery did not indicate emergency or immediate surgery was required, as she was willing to wait until Plaintiff's purported release date 30 days later. During Plaintiff's brief stay in the Gillespie County Jail,

including the time between Dr. Sant'Anna's examination and Plaintiff's return to Hays County, Plaintiff was provided pain medication and other medical care in Gillespie County. There is sufficient evidence to rebut Plaintiff's claims of deliberate indifference. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193–95 (5th Cir. 1993)). According, Defendant Mills is entitled to summary judgment.

### 2. Hays County - Official Capacity Claims Against Sheriff Gary Cutler

Fact issues preclude summary judgment with regard to Plaintiff's claims brought against Hays County Sheriff Gary Cutler in his official capacity. As mentioned above, Plaintiff was returned to Hays County on September 29, 2016. The progress notes from the Hays County Jail on the day of Plaintiff's return indicate Dr. Bryant for Correct Care Solutions acknowledged a followup appointment with a provider was needed to review the necessity for surgery on the cyst. Def.'s Appx. Supp. Summ. J. [#34-1] at 50. On October 20, 2016, Plaintiff was brought to the infirmary for a follow up on his cyst. *Id.* at 52. Nurse Practitioner Jennifer Freytag noted Plaintiff complained of continued foot pain and that the cyst was growing larger. *Id.* She compared the size of the cyst to a small orange. *Id.* She ordered the continuation of pain medication and ordered that Plaintiff be referred to "podiatry/general surgery" and that Plaintiff be returned to the clinic in 30 days. *Id.* Plaintiff returned to the clinic on November 4, 2016, after an inmate stepped on Plaintiff's foot while playing basketball. *Id.* at 55. An x-ray, not approved by Freytag, showed no acute fractures but confirmed dorsal soft tissue swelling. *Id.* at 56. Plaintiff was prescribed pain medication. *Id.* at 57-60. On December 20, 2016, Plaintiff submitted a healthcare request, reporting the pain in his foot

"hurts bad!" *Id.* at 66. On December 21, 2016, Plaintiff was seen by a nurse and referred to Freytag. *Id*. at 63-65. On December 23, 2016, Plaintiff was seen in the infirmary by Freytag. *Id.* at 67. She noted the cyst had grown slightly larger since the last visit. *Id.* In her declaration she stated she checked the status of his referral to the podiatrist but fails to state on what date she checked or what she discovered. *Id.* [#34-2] at 242.

On December 31, 2016, Plaintiff submitted a grievance begging for help. Pl.'s Resp. [#36-3]. John Henry Cavanaugh, L.V.N., responded on January 2, 2017, "We are aware of your cyst. You have been seen by the provider. There is nothing more we can do. This is a preexisting condition that is going to have to be taken care of when you get out." *Id.*

On January 17, 2017, Plaintiff's defense attorney filed a motion in Plaintiff's criminal case asking the court to order Sheriff Cutler to provide appropriate medical care. Counsel indicated to the trial court:

> Bernell Quillens is suffering from an undiagnosed medical condition, the apparent aspect of which is a large and growing tumorous growth on his left foot. The growth has increased in size dramatically since Quillens' arrest.
>
> Bernell Quillens has repeatedly requested that the Sheriff secure the attention of a doctor to examine this tumor. Thus far, Sheriff's medical personnel have looked at the tumor, made no diagnosis, and offered no treatment. Counsel Kelly Higgins was informed by Hays County Jail medical personnel that Mr. Quillens' condition had been noted, but provided no further assurances that Mr. Quillens would be treated as medically necessary. Mr. Quillens is in apparent danger of losing his foot, in addition to any other undesirable outcomes attributable to the Sheriff's failure to provide adequate medical attention. The growth is, in a word, horrible to see.

*Id.* [#36-2] at 2-4. The trial court ordered the Sheriff of Hays County to present Plaintiff to a "qualified medical doctor for examination, tests as ordered by the medical doctor, and any treatment

recommended by the medical doctor." *Id.* [#36-3] at 2. The court instructed his order was to be carried out immediately, without delay. *Id.*

While counsel's motion was pending but before the trial court granted the motion, Plaintiff submitted a sick call request on January 19, 2017. Def.'s Appx. Supp. Summ. J. [#34-1] at 69. Plaintiff complained his foot problem was "very bad," "it hurts to sleep," and his cyst is getting "bigger and bigger!!!" *Id.* Plaintiff was seen in the clinic on January 20, 2017. *Id.* at 70-73. Freytag prescribed pain medication to be taken in the morning and on January 23, 2017, changed the prescription from 30 days to 60 days. *Id.* at 73-74. On January 29, 2017, Plaintiff requested that his medicine be changed to evenings. *Id.* at 75. On January 31, 2017, an appointment was scheduled for Plaintiff to see a medical provider at the Hill Country Foot Specialist. *Id.* at 76. On February 8, 2017, Dr. Robert D. Parker examined Plaintiff's foot. *Id.* at 83. He ordered x-rays of the left foot and an MRI with and without contrast. *Id.* On February 24, 2017, Plaintiff had the x-rays and MRI. *Id.* at 92-93. The MRI results indicated the cyst was consistent with a malignant neoplasm. *Id.* at 93. On February 28, 2017, Dr. Parker reviewed the report and ordered that Plaintiff be referred to oncology immediately. *Id.* at 95. On March 28, 2017, Cavanaugh scheduled an oncology appointment for Plaintiff for April 11, 2017. *Id.* at 96. Dr. Ronald P. Williams performed a biopsy of Plaintiff's cyst at that appointment. *Id.* at 102. On April 26, 2017, Dr. Williams's physician assistant notified medical personnel at the Hays County Jail that Plaintiff would require surgery at St. David's Hospital on May 25, 2017. *Id.* at 105. Plaintiff's surgery occurred as scheduled. *Id.* at 115-17. Plaintiff was released from St. David's Hospital on June 15, 2017, and was sent to a specialty hospital for wound care. *Id.* at 115-37. Plaintiff was returned to the Hays County Jail on

July 7, 2017, after Dr. Whitfield, the plastic surgeon, determined Plaintiff was ready for release. *Id.* at 138-41.

Plaintiff's theory against Hays County centers on the response Plaintiff received to his December 31, 2016 grievance. As mentioned above, the response stated, "We are aware of your cyst. You have been seen by the provider. There is nothing more we can do. This is a preexisting condition that is going to have to be taken care of when you get out." Pl.'s Resp. [#36-3] at 3.

Defendants provide absolutely no explanation for the delay in scheduling Plaintiff for a doctor's appointment regarding his cyst other than the cyst was a pre-existing condition. During the four month delay from the time Plaintiff was returned to Hays County with a doctor's recommendation for surgery and the time an appointment was scheduled for Plaintiff to see a doctor, Plaintiff reported he was in pain and the cyst was growing. In light of Cavanaugh's response to Plaintiff's December 31, 2016 grievance, it appears the delay may be attributed to a Hays County policy, practice or custom of denying medical treatment for pre-existing conditions. If Hays County medical personnel refused to refer Plaintiff to an appropriate medical provider for treatment of his cyst merely because the cyst was a pre-existing condition, this would clearly evince a wanton disregard for any serious medical needs. This, in turn, would violate Plaintiff's clearly established constitutional rights with subjective deliberate indifference. Accordingly, the Court finds genuine issues of material fact exist as to the reason for the delayed appointment and whether Hays County had a policy of denying medical treatment for pre-existing conditions regardless of the seriousness of the medical complaint. Accordingly, summary judgment is denied as to Plaintiff's claims brought against Sheriff Cutler in his official capacity.

### D. Qualified Immunity

Defendants assert their entitlement to qualified immunity. A government official performing a discretionary function is entitled to qualified immunity unless his actions violate a clearly established right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Where, as here, a defendant invokes qualified immunity in a motion for summary judgment, it is the plaintiff's burden to show that the defendant is not entitled to qualified immunity. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). That is, the plaintiff must present evidence sufficient to create a genuine dispute of material fact as to whether (1) the official's conduct violated a constitutional right of the plaintiff, and (2) the constitutional right was clearly established so that a reasonable official in the defendant's situation would have understood that his conduct violated that right. *See id.; Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

As stated above Plaintiff has not shown Defendant Mills or any employee of Gillespie County violated his constitutional right to adequate medical care. Accordingly, Defendant Mills is entitled to qualified immunity.

Defendant Freytag is also entitled to qualified immunity. The summary judgment evidence shows she responded to Plaintiff's inquiries, provided treatment orders, prescribed pain medication, and requested independent consultations. While Plaintiff's appointment with a specialist was delayed, Plaintiff has provided no summary judgment evidence that Nurse Freytag was the cause or that Freytag refused to treat Plaintiff, ignored his complaints, intentionally treated him incorrectly or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.

The Court is unable to determine whether Defendant Cutler is entitled to qualified immunity at this time. Fact issues exist as to whether Hays County had a policy, practice or custom implemented by the sheriff to deny medical care for pre-existing medical conditions. The grievance response "We are aware of your cyst. You have been seen by the provider. There is nothing more we can do. This is a preexisting condition that is going to have to be taken care of when you get out" is evidence that a policy may exist. In their reply, Defendants maintain the grievance response was a statement made by a former employee, and the employee was not acting in guidance with Hays County policies and procedures. They conclude the grievance response is not indicative of the County's policy or protocol.

Although Defendants deny Cavanaugh was acting pursuant to County policy or protocol, they do not provide the Court with any summary judgment evidence to support their claim. Neither Sheriff Cutler nor Nurse Practitioner Freytag in their affidavits, sworn to under penalty of perjury, even acknowledged Cavanaugh's response to Plaintiff's grievance. As such, Defendant Cutler failed to provide any summary judgment evidence showing no such policy, practice or custom existed.[2] Accordingly, summary judgment is not appropriate with respect to Plaintiff's claims brought against Sheriff Cutler in his individual capacity.

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment [#32] is **GRANTED IN PART AND DENIED IN PART**. Summary judgment is granted as to Plaintiff's

---

[2] The Court notes, if no policy, practice or custom exists, Sheriff Cutler would be entitled to qualified immunity. The summary judgment evidence shows he was not otherwise personally involved in Plaintiff's medical care.

claims brought against Defendants Mills and Freytag.  Summary judgment is denied as to Plaintiff's claims brought against Defendant Cutler.

**SIGNED** on May 9, 2019.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE